ARMSTRONG, APPELLANT, v. BILLINGS, RESPONDENT.

(No. 6,543.)

(Submitted November 15, 1929. Decided December 19, 1929.)

[283 Pac. 226.]

230

*Mr. H. C. Crippen,* for Appellant, submitted an original and a reply brief, and argued the cause orally.

*Messrs. Brown, Wiggenhorn & Davis,* for Respondent, submitted an original and a supplemental brief; *Mr. Horace R. Davis* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff has appealed from a judgment, entered on a directed verdict, in favor of defendant.

The plaintiff, E. M. Armstrong, alleges that he was employed by the defendant, J. J. Billings, to work on a sheep ranch in Wyoming and that, on March 11, 1927, he was furnished, for work in the course of his employment, a team of horses, one of which was "a dangerous, unruly, vicious bronco, not thoroughly broken"; that the defendant knew, or in the exercise of reasonable care should have known, the character of this horse, yet neither the defendant nor his agent in charge of the ranch advised plaintiff of its character, and that he had no knowledge or means of knowing the facts. The complaint then alleges that, while plaintiff was driving the team the "bronco" began to buck, frightened the other horse, and both became unmanageable and ran away, and "that while so running away the plaintiff saw immediately in front of said team of horses, and for which the team was headed, a deep ditch or water course; that fearing he would be killed or at least seriously injured, and acting solely because of such fear, the plaintiff jumped from the wagon" and was seriously injured.

The defendant interposed a general demurrer to the complaint, which was overruled, and thereupon answered. The answer denies that plaintiff was employed by defendant, and alleges that plaintiff was injured "in the course of his employment by one Paul Warfel, and not otherwise." The answer contains four alleged affirmative defenses, two of which allege assumption of risk and two contributory negligence. Plaintiff moved to strike each of the affirmative defenses on

the ground that all were irrelevant and redundant, which motion was overruled. Plaintiff then replied denying the affirmative matter in the answer.

On the issues as framed the parties proceeded to trial before the court and a jury duly impaneled. When the first witness was sworn, defendant objected to the introduction of any testimony on the ground that the complaint did not state facts sufficient to constitute a cause of action, which objection was overruled. At the close of plaintiff's case, defendant moved for judgment of nonsuit upon the grounds, among others, that the complaint is insufficient and the evidence would not warrant a verdict in favor of plaintiff; this motion was overruled, and defendant introduced his evidence. At the close of all the evidence defendant moved the court for an instructed verdict on the grounds urged for judgment of nonsuit; this motion was granted, and verdict and judgment in favor of defendant followed.

Plaintiff has appealed from the judgment; he predicates error upon the court's action (1) in denying his motion to strike the alleged affirmative defenses, (2) in directing a verdict for defendant, and (3) in entering judgment in favor of defendant.

In argument of his second and third specifications of error, counsel for plaintiff invokes the rules that (a) motion for directed verdict should not be granted unless an essential averment has been omitted from the complaint and thereby the defendant has been misled to his prejudice, and then only if he has not supplied the necessary facts by his own evidence (*Johnson* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 71 Mont. 390, 230 Pac. 52); (b) the complaint must be liberally construed with a view to substantial justice between the parties, and the court must disregard any error or defect which does not affect the substantial rights of the parties (*Boyd* v. *Great Northern Ry. Co.*, 84 Mont. 84, 274 Pac. 293); (c) the idea that a disappointed litigant who has had a fair and impartial trial upon the merits of the cause may obtain a new trial because of the absence of nonessential

allegations, or for some mere defect in pleading, is archaic and has been relegated to the past in this jurisdiction (*Davis* v. *Freishcimer,* 68 Mont. 322, 219 Pac. 236); and (d) that, even if error is committed in overruling a demurrer, it is error without prejudice unless the demurring party was misled by the defects and the case is not fairly tried on the merits. (*McManus* v. *Butte Electric Ry. Co.,* 68 Mont. 379, 219 Pac. 241.)

These rules are reaffirmed, and will be applied in all cases where applicable, but here the rules stated do not apply for the reason that the defendant challenged the sufficiency of the complaint at every stage of the proceeding by general demurrer, by objection to all evidence, by motion for judgment of nonsuit, and motion for a directed verdict.

The demurrer considered in the *McManus Case* was for ▮▮▮▮ uncertainty; answering over after the overruling of such a demurrer waives the defect (*McQuay* v. *McQuay,* 81 Mont. 311, 263 Pac. 683; *Flint Creek Lodge* v. *Brown,* 81 Mont. 573, 264 Pac. 394), and therefore the rule as to supplying defects by evidence was applicable; but answering over after general demurrer for insufficiency of facts does not waive the defect in the complaint, if one exists, and the objection, made by demurrer or objection to the introduction of any evidence, saves the question for all purposes (*Boyle* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 60 Mont. 453, 199 Pac. 283; *Wells-Dickey Co.* v. *Embody,* 82 Mont. 150, 266 Pac. 869), and it cannot thereafter be said that the defect is cured by the introduction of evidence. Further, if the complaint does not state facts sufficient to constitute a cause of action and is challenged for that defect before evidence is introduced, it cannot be said that the omitted matter is "non-essential" or the "mere defect" in pleading referred to in *Davis* v. *Freisheimer,* above. (*Dickason* v. *Dickason,* 84 Mont. 52, 274 Pac. 145.)

While pleadings are to be liberally construed, and whatever is necessarily implied or reasonably inferred from the allegations made is to be considered as directly averred (*Grasswick*

v. *Miller,* 82 Mont. 364, 267 Pac. 299; *State ex rel. Hahn* v. *District Court,* 83 Mont. 400, 272 Pac. 525; *Cook* v. *Galen,* 83 Mont. 334, 272 Pac. 250), the court cannot supply essential averments neither alleged nor inferable from the allegations made.

Had the court, consistent with its former rulings, denied the motion for directed verdict, and had plaintiff recovered judgment, the first question presented would have been as to whether the complaint was sufficient to withstand the attack by general demurrer and objection to the introduction of any testimony, and here, in determining the sufficiency of the judgment entered, that question should first be considered.

The sufficiency of the complaint before us is challenged by the assertion that it shows on its face that the injury suffered by plaintiff resulted from his own contributory negligence, which bars recovery unless by his pleading he exculpates himself from the effects thereof, and this he has not done.

Since *Higley* v. *Gilmer,* 3 Mont. 90, 35 Am. Rep. 450, it has been the doctrine in this jurisdiction that contributory negligence is a matter of defense, the absence of which plaintiff is not required to negative, except in that class of cases of which *Kennon* v. *Gilmer,* 4 Mont. 433, 2 Pac. 21, is typical (*Nord* v. *Boston & Montana Co.,* 33 Mont. 464, 84 Pac. 1116; *Stephens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45; *Birsch* v. *Citizens Electric Co.,* 36 Mont. 574, 93 Pac. 940), but the corollary or modification of this rule, contained in the doctrine announced in the *Kennon Case,* is as firmly established as is the general principle itself and is not inconsistent therewith; it is that the plaintiff, having alleged facts in his complaint which show "that the proximate cause of his injury was from his own act," is required "to first state and then prove that, in the doing of this, he acted with a reasonable degree of care and prudence."

There can be no question but that, in the case at bar, the complaint shows that plaintiff's own act was the proximate cause of his injury. (*Kennon* v. *Gilmer,* above; *Badovinac* v.

*Northern Pac. Ry. Co.*, 39 Mont. 454, 104 Pac. 543, 544; *Lynes* v. *Northern Pac. Ry. Co.*, 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81, 83.) This being so, this case comes squarely within the corollary, the debatable question being as to how and to what extent the exculpation of plaintiff must be alleged in the complaint.

Plaintiff contends that the doctrine of *Kennon* v. *Gilmer* has been receded from in subsequent opinions and should not be followed here. It is true that the doctrine has been variously stated in the numerous opinions since written, but in each of these, as will later appear, the doctrine of *Kennon* v. *Gilmer* has been affirmed and followed.

The complaint in the *Kennon Case* alleged that a coach in which plaintiff was riding was "by the fault and neglect of the defendants placed in a condition so as to 'imperil the safety of plaintiff' and 'to render it apparently unsafe'" for him to longer remain therein, and that "being actuated by great fear of bodily injury * * * he jumped, and thereby received the injury complained of." The condition there alleged was also brought about by furnishing unruly horses as the motive power for the coach. A general demurrer was overruled and a trial had, resulting in a judgment in favor of plaintiff. On appeal from this judgment the court held the complaint insufficient and reversed the judgment, stating: "As the injury resulted from the jumping, and not from the accident to the stage, it was incumbent upon the plaintiff to first allege and then prove that he was in the exercise of ordinary and proper prudence in jumping and was thus free from any contributory negligence." Amplifying this statement and supporting it by many citations, the court declared: "Generally proof of the injury furnishes the proof or raises a strong presumption of negligence on the part of the carrier. As in cases where the stage or vehicle in which the passenger is being conveyed is overturned * * * in these and all similar cases the accident to the conveyance is what injures the passenger and the condition of the vehicle, coupled with the injury, raises a presumption of negli-

gence, * * * but not every accident raises such a presumption; and when, as in the present case, the passenger is injured by the act of jumping, no presumption of negligence on the part of the carrier arises from the accident itself, and the party claiming damages should both allege and prove that the injury complained of did not result from neglect or omission of proper caution on his part. In other words, as stated in the books, that he was not guilty of contributory negligence." Thereafter the complaint was amended, in this particular, to read: "That the plaintiff in so jumping from the coach acted as a reasonable and prudent man would have acted under like circumstances and that he did not contribute to the injury he received and was without fault on his part." The complaint was thereafter treated as sufficient, and a subsequent judgment modified and affirmed in *Kennon* v. *Gilmer,* 5 Mont. 257, 51 Am. Rep. 45, 5 Pac. 847, and no question as to the sufficiency of the amended complaint was raised on writ of error to the supreme court of the United States (131 U. S. 22, 33 L. Ed. 110, 9 Sup. Ct. Rep. 696) or on entry of judgment in conformity with the decision of that court (*Kennon* v. *Gilmer,* 9 Mont. 108, 22 Pac. 448).

The amendment to the complaint alleges conclusions of the pleader rather than facts from which the conclusion might be drawn, and, while the doctrine announced in the *Kennon Case* has been approved and applied in approximately twenty opinions since written, the declaration as to what must be alleged and proved in this regard, in order to state a good cause of action, has been modified by more accurate statements of the rule.

For some time the court contented itself with the declaration that "in such a case it devolves upon the plaintiff * * * to clear himself of the suspicion of negligence that he has himself created" (*Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905; *Prosser* v. *Montana Central Ry. Co.,* 17 Mont. 372, 30 L. R. A. 814, 43 Pac. 81; *Cummings* v. *Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68 Pac. 852; *Taillon* v. *Mears,* 29 Mont. 161, 1 Ann. Cas. 613, 74 Pac. 421); but again, in *Ball*

v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871, 873, the court declared that: "If * * * the complaint shows the proximate (or a proximate) cause of the injury to have been the act of the plaintiff, the complaint must also state his freedom from negligence in the doing of the act; otherwise the pleading is bad * * * the burden is * * * upon him to prove that he was exercising ordinary care at the time." This rule is approved in *Nord* v. *Boston & Montana Co.,* 30 Mont. 48, 57, 75 Pac. 681.

In *Montague* v. *Hanson,* 38 Mont. 376, 99 Pac. 1063, 1065, the rule in the *Kennon Case* is approved and declared "obviously just," but the rule is paraphrased to read that the complaint will be held insufficient, "unless it goes further and by appropriate allegations *shows* that the plaintiff was at the time exercising ordinary care and circumspection," thus calling for allegations of facts rather than conclusions.

Thereafter the court went one step further and declared the rule to be that: "In any event, the plaintiff having alleged in his complaint that the proximate cause of his injury was his voluntary act * * * he thereupon assumed the burden of alleging facts sufficient to show that in so doing he was not guilty of contributory negligence * * * ; in other words * * * he must allege facts sufficient to show that he acted as a reasonably prudent person under like circumstances would have acted." (*Badovinac* v. *Northern Pac. Ry. Co.,* above.) The complaint "must set forth the facts showing that he was free from negligence" (*Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412, 413), or "that in doing the particular act he was moved by those considerations for his own safety which would actuate a reasonably prudent person, similarly situated, to do as he did" (*Lynes* v. *Northern Pac. Ry. Co.,* above; *Nilson* v. *City of Kalispell,* 47 Mont. 416, 132 Pac. 1133).

The requirement, therefore, is, not that the plaintiff must allege in set terms that he acted as a reasonably prudent person would have acted under the circumstances and was not chargeable with contributory negligence, but that he must allege

*facts* from which it must necessarily be implied, or from which it can be reasonably inferred, that, although his act was the, or a, proximate cause of his injury, in so acting he was moved by those considerations for his own safety which would actuate a reasonably prudent person, similarly situated, to do as he did, and that he was, consequently, not guilty of contributory negligence barring recovery.

Aside from the pleadings, "whenever the plaintiff's own case ██ presents evidence which, if unexplained, would make out prima facie contributory negligence on his part, there must be further evidence exculpating him, or he cannot recover." (*Harrington* v. *Butte Electric Ry. Co.,* 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8, 9; *Meehan* v. *Northern Pac. Ry. Co.,* 43 Mont. 72, 114 Pac. 781.)

The sufficiency of each complaint considered must be determined from the fact conditions therein set out, and, if the necessary deductions can be drawn from the allegations made, and the facts alleged are established by proof, the question as to whether or not the plaintiff in a given case acted as would a reasonably prudent person under similar circumstances, or was guilty of contributory negligence, is for the jury's determination. (*Smith* v. *Zimmer,* 45 Mont. 282, 125 Pac. 420.)

Recognizing and applying the above rules, this court held in *Poor* v. *Madison River Power Co.,* 38 Mont. 341, 99 Pac. 947, 954, an action for death of an employee of defendant caused by coming in contact with an electric current, that the complaint was rendered sufficient in this regard by the allegation that deceased "was engaged in the performance of his duty"; that he "accidentally lost his footing [on a high scaffolding] and in an attempt to prevent his falling from said height to the floor below, and, not knowing that the same was charged with electricity, threw his arm over the said wire"; that he "was inexperienced with electric wires, and did not know that the wire * * * was charged"; that the defendants had knowledge and notice of the conditions and negligently failed to notify the deceased of them.

238

And in *Conway* v. *Monidah Trust,* 47 Mont. 269, L. R. A. 1915E, 500, 132 Pac. 26, wherein damages were asked for injury to a seven year old child when it fell into an open shaft, the court first stated that, as to such a child, the rule had no application, "but apart from this consideration," allegations as to the age of the child, the fact that it was dusk, his ignorance of the existence of the shaft, the natural engrossment in his childish pursuit, and the general allegation that he was "using due care and prudence and without contributing fault and carelessness on his part," were sufficient to negative contributory negligence and to avoid the rule.

The allegations in the *Conway Case* were so clearly sufficient that the reasoning there does not aid us in the case at bar.

In the *Poor Case* the act of negligence on the part of deceased was, if negligence on his part was shown at all, in losing his balance; the negligence of the defendant in requiring him to work near the charged wire without warning him of its dangerous condition; when, without knowing that it was an electrically charged wire, deceased threw his arm over it to save himself, he had no reason to apprehend that his act would, or could, cause injury, and therefore it was reasonably inferable from the allegations that a reasonably prudent person would have done as did the deceased.

In the case at bar we have an entirely different situation. Here the allegations as to the vicious nature of the horse, plaintiff's ignorance of this fact and lack of opportunity to discover it, defendant's failure to advise or warn him and the consequent runaway, are all included in and but a part of the charge of negligence on the part of the defendant, placing plaintiff in a situation of peril, and, had the injury to plaintiff resulted from his being thrown from the wagon or truck when it went into the ditch mentioned, the complaint would have been sufficient under the authority of *Schroder* v. *Montana Iron Wks.,* 38 Mont. 474, 100 Pac. 619, *Hollenback* v. *Stone & Webster Engineering Corp.,* 46 Mont. 559, 129 Pac. 1058, and *Nilson* v. *City of Kalispell,* above. But, when plaintiff alleged that he jumped from the wagon voluntarily, he

brought himself squarely within the rule that he must then plead further facts exculpating him from the suspicion of contributory negligence, and the only facts he can now rely upon for this purpose are that the team was running away and was unmanageable and he saw "immediately in front of them, and for which they were headed, a deep ditch or water course." Do these allegations warrant the inference that, in the situation of plaintiff, a reasonably prudent person would have jumped from the wagon?

The complaint does not advise us as to how far the horses had run or the rate of speed at which they were going, or as to the nature of the "deep ditch"—how wide was it, and were the banks sloping or otherwise? What was the nature of the ground over which the horses were running? These matters would have a distinct bearing upon the question of prudence in jumping from the wagon. If the team had run some distance, had become fairly well exhausted and slowed down to a lumbering canter and were about to go into a deep and narrow ditch with practically perpendicular banks, a reasonably prudent person might determine that it was reasonably safe to jump, and that by so doing he would be less likely to be injured than by staying with the wagon, although men accustomed to driving horses might consider that it is always more safe to stay with the vehicle than to jump.

On the other hand, if the ditch, though deep, was wide and with sloping banks, a reasonably prudent person might well consider that safety lay in staying with the wagon and, even if the ditch had straight banks, such a person might consider that the team would be stopped by falling into the ditch, and the safest place for the driver was in the wagon which would come to a stop without going into it. If the horses were running fast, a reasonably prudent person might consider that jumping was the most dangerous course a driver could take.

Tested, as was the complaint in the *Badovinac Case* and the *Lynes Case*, if the plaintiff went on the stand and testified only that the team was running away, had become unmanageable and was headed for a "deep ditch" immediately in front

of it, and, fearing that he would be killed or seriously injured, "and acting solely because of such fear," he jumped from the wagon and was injured, could a jury determine whether or not he acted as a reasonably prudent person would have acted under the circumstances? The conclusion of the court in the *Lynes Case* is applicable here: "We undertake to say that no man or body of men could answer the question one way or another, because there are not sufficient facts upon which to base an answer or to form an opinion."

The complaint is insufficient; the demurrer thereto should have been sustained. It follows that the judgment must be affirmed.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES FORD and ANGSTMAN, and HONORABLE WILLIAM L. FORD, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.